ASYLUM OF ST. VINCENT DE PAUL, Appellant, Respondent, *v.* EDWARD J. McGUIRE, Individually and as Trustee in Bankruptcy of the Estate of LOUIS H. AMY and ERNEST J. H. AMY, Individually and as Copartners Doing Business as H. AMY & Co., Bankrupts, Respondent, Appellant, Impleaded with CHASE NATIONAL BANK and Others, Defendants, and KATHARINE S. CRAMER, Individually and as Executrix, etc., of KATE P. SPENCER, Deceased, and Others, Respondents.

First Department, April 4, 1924.

Pledges — pledge of stolen securities as collateral — all creditors of thief must contribute to payment of debt where equities equal — pledgee not sole judge of what securities to sacrifice — member of firm of stockbrokers holding securities of plaintiff merely for safekeeping delivered same to his firm which pledged them together with other securities similarly held to defendant bank as collateral — firm was subsequently adjudicated bankrupt and said securities were sold by bank and proceeds used to satisfy loan — owners of stolen securities should contribute ratably to payment of loan after securities rightly pledged have been sold.

Where stolen securities are pledged as collateral for the payment of a debt there must, where the equities are equal, be contribution; all the creditors of the thief similarly situated must contribute to the payment of the debt so that

there may be equality and justice. The pledgee of such stolen securities should not be permitted to be the sole judge of what securities to sacrifice.

Accordingly, where a member of a firm of stockbrokers, having in his possession, merely for safekeeping, securities of the plaintiff which were negotiable by delivery, delivered said securities to his firm which, without the knowledge or consent of the plaintiff, pledged the securities together with others similarly held by it to the defendant bank as collateral security for a loan, and the bank, after the bankruptcy of the firm of brokers, sold the aforesaid securities and applied the proceeds in payment of the loan, an order should be made directing the application, *first,* of the proceeds of all pledged securities as to which the firm of stockbrokers had the right to pledge, and *secondly,* if the proceeds of such securities are insufficient to pay the loan, directing that the owners of the stolen securities should contribute ratably to the payment of the remainder of the loan.

APPEAL by the plaintiff, Asylum of St. Vincent de Paul, and by the defendant, Edward J. McGuire, individually and as trustee, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 14th day of March, 1923, upon the decision of the court after a trial at the New York Special Term.

*Goldman & Unger* [*William F. Unger* of counsel; *Samuel Rubin* with him on the brief], for the plaintiff.

*Edward J. McGuire* [*James F. McNaboe* with him on the brief], in person, for the defendant, respondent, appellant.

*Humes, Buck, Smith & Tweed* [*B. L. Stowell* of counsel; *A. L. Humes* with him on the brief], for the respondent Katharine Spencer Cramer, individually and as executrix, etc.

*Beekman, Menken & Griscom* [*William Campbell Armstrong* of counsel], for the respondents Monneron and Guye.

*Middlebrook & Borland* [*Middleton S. Borland* of counsel; *Percy F. Griffin* with him on the brief], for the respondent Ernestine E. D. Popp, individually and as trustee, etc.

*Paul G. Gravenhorst,* for the respondents George F. Frank and others.

*Geller, Rolston & Blanc* [*George S. Mittendorf* of counsel], for the respondents The Farmers' Loan and Trust Company and another, as executors, etc.

MARTIN, J.:

On the 5th day of March, 1919, the defendants Louis H. Amy, and Ernest J. H. Amy were copartners engaged in the stock-

42

brokerage business under the firm name of H. Amy & Co.   On that day they made an assignment for the benefit of creditors in accordance with the laws of the State of New York.

On March 19, 1919, a petition in bankruptcy was filed in the office of the clerk of the United States District Court for the Southern District of New York against the said Louis H. Amy and Ernest J. H. Amy, individually and as copartners, and on June 9, 1919, they were adjudicated bankrupts.

Prior to March 5, 1919, the defendant Louis H. Amy was the treasurer of the Asylum of St. Vincent de Paul, the plaintiff herein, and, as such treasurer, had the custody and control of its funds and securities.   Among those securities were the following:

Seven $1,000 bonds of the Hocking Valley Railway Company, four and one-half per cent, 1999 first consolidated mortgage.

Ten $1,000 bonds of United States Steel Corporation, five per cent sinking fund, 1963.

Ten $1,000 bonds of the Pacific Coast Company, five per cent, 1946.

Five $1,000 bonds of the Chicago, Burlington and Quincy Railroad, joint four per cent, 1921 (Northern Pacific-Great Northern).

Five $1,000 bonds of the Chicago, Burlington and Quincy Railroad, general mortgage four per cent, 1958.

Six $1,000 bonds New York Central, four per cent consolidated mortgage, 1998.

Five $1,000 bonds of the Chicago, Milwaukee and Saint Paul Railway Company, four and one-half per cent general mortgage gold bonds, 1989.

Six $1,000 bonds of the Oregon Short Line Railroad Company, four per cent, 1929, refunding.

Ten $1,000 bonds of the Central Leather Company, first lien, twenty year, five per cent, 1925.

The defendant Louis H. Amy delivered these securities to the firm of H. Amy & Co., without the knowledge or consent of any one connected with the plaintiff.   On the 21st day of January, 1915, the firm of H. Amy & Co. borrowed from the defendant the Chase National Bank the sum of $250,000 and deposited with that bank collateral securities for said loan.

Prior to March 5, 1919, said firm delivered all of the securities belonging to the plaintiff to the Chase National Bank as further collateral for the loan of $250,000 or in substitution of securities withdrawn.   The court at Special Term found as facts that these securities were pledged with the Chase National Bank without the knowledge or consent of plaintiff; that said H. Amy & Co. knew at the time the pledge was made that the securities were the

property of the orphan asylum and that they had been wrongfully taken from it by its treasurer.

In addition to the securities belonging to the plaintiff which are set forth above, there were pledged with the Chase National Bank other securities, the property of various people who had intrusted them to H. Amy & Co. for safekeeping.

All of the securities, bonds and stocks pledged by the firm of H. Amy & Co. with the defendant the Chase National Bank were either payable to bearer or were duly indorsed for transfer by the owner. They were negotiable by delivery when they came from the owners into the physical possession of the defendants Louis H. Amy and Ernest J. H. Amy, whether individually or as copartners under the firm name of H. Amy & Co.

After the general assignment of H. Amy & Co., and on or about March 13, 1919, the defendant the Chase National Bank caused certain of the securities so pledged to and held by it as above set forth, after due notice and demand for payment, to be sold. A portion of the proceeds of such sales after paying the expense of selling was applied in payment of the indebtedness and the interest thereon then due to the bank by the firm of H. Amy & Co.

Included in the securities pledged with the bank which were the subject of the sales of March 13, 1919, were 100 shares of stock of the Western Union Telegraph Company which the bank sold for the net amount of $8,883.50, which sum was not applied to the payment of its debt but was set aside by it in the form of a cashier's check which it now holds subject to the order or judgment of this court.

On March 18, 1919, the defendant the Chase National Bank, after proper notice and demand, sold from the remaining stocks and bonds so pledged to it as above set forth, $6,000 par value of first consolidated four and one-half per cent bonds of the Hocking Valley Railroad Company, numbered 14481, 14482, 1317, 1320, 14503 and 14505, which were the property of the plaintiff orphan asylum, and twenty-eight shares of New York Dock Company preferred stock, which were the property of defendants Monneron and Guye. The proceeds thereof, after deducting the expenses of the said sale, amounted to $5,852.64, of which $4,625.26 were the proceeds of the Hocking Valley Railroad Company's bonds and of which $1,227.38 were the proceeds of the New York Dock Company preferred stock. Out of the net proceeds of the sale the defendant the Chase National Bank applied $4,803.32 to the payment of the amount remaining of the indebtedness of the firm of H. Amy & Co., Louis H. Amy and Ernest J. H. Amy, as aforesaid, resulting from the aforesaid loan, which payment fully satisfied and paid the

whole indebtedness due the Chase National Bank, amounting to $251,536.25.

On or about the 13th day of March, 1919, on which day the sales first above referred to were made by the Chase National Bank, the attorney for Kate P. Spencer and Katharine S. Cramer delivered to the bank a letter dated March 12, 1919, directing it to sell securities other than those owned by them and calling attention to the fact that the securities of Kate P. Spencer and Katharine S. Cramer held by the bank had been wrongfully pledged, and that Amy & Co. were only custodians of the same.

At the time of the delivery of this letter to the bank, 100 shares of the capital stock of the Western Union Telegraph Company owned by Katharine S. Cramer had been sold by the Chase National Bank, the proceeds of which sale amounted to the sum of $8,883.50 above mentioned.

The very interesting question of law which has now developed in this proceeding appears to be somewhat novel in this State, but has been under consideration in the Federal courts.

At the outset it will be necessary to state briefly the position of the owners of the pledged securities. The securities belonging to plaintiff orphan asylum had been misappropriated. Many of the other securities pledged as aforesaid had also been misappropriated, but they had been voluntarily left with H. Amy & Co. as custodians, without transferring title and for the sole purpose of safekeeping. The securities of the plaintiff orphan asylum came into the possession of Louis H. Amy by reason of the fact that he was the treasurer of that institution and custodian thereof by virtue of his office as treasurer. The title to them was transferred by delivery. All of the securities were pledged for this loan with the Chase National Bank and, under the particular circumstances of this case, that bank had the right after demand to sell them to pay the amount of its loan.

We are now called upon to decide if there shall be contribution between the creditors.

The bank sold part of the securities for the purpose of paying its debt, but when notified that some of them had been misappropriated it refused to apply the proceeds thereof to its debt and proceeded to sell other securities which had also been misappropriated.

It is necessary to determine whether a pledgee holding securities which, as events prove, were stolen, is to be the sole judge of the order in which he will sell similarly situated securities to liquidate the debt, payment of which has been secured by the pledge of various stolen securities with him as collateral.

It would be a dangerous rule to allow a pledgee to decide the

order in which he will sell, thereby permitting him to prefer one creditor over another, and infinitely more dangerous to allow him, after making his election, to rescind it and proceed to sell the securities of another unfortunate victim.

Some of the earlier decisions in the Federal courts held that the pledgee had the absolute right to select for sale whatever securities he chose; that his decision was final and that thus he might arbitrarily advance the interests of a favored creditor.

The injustice of this doctrine evidently became apparent, for the later decisions are to the effect that, where stolen securities are pledged as collateral for the payment of a debt, there must, where the equities are equal, be contribution; that all the larceny creditors similarly situated must contribute to the payment of the debt so that there may be equality and justice. That this is the correct rule becomes more apparent by a reference to the transactions here involved. It appears that the Chase National Bank first made its election and sold the securities of defendant Kramer but thereafter set aside the proceeds of that sale, refused to apply them on its claim, then sold the securities of the plaintiff orphan asylum and applied the proceeds of that sale in liquidation of the rest of the debt.

An unjust result such as this should not be tolerated. The pledgee who has been transacting business with one who has the collateral stolen should not be permitted to be the sole judge of what securities to sacrifice. The pledgee should not be free to favor whom it may choose, perhaps a business associate, wife or relative of the defaulter. If such a course were to be permitted it is quite evident that the securities of the orphan asylum might be sacrificed in preference to those of a relative or member of the family of the pledgee.

To permit the remote possibility of the wrongdoer influencing the pledgee in his election or decision as to the sale of the securities which he misappropriated and, thus, to further deplete the assets of his unfortunate victim, would seem to me to reach a result which is not to be countenanced in a court of equity.

This court should bring about equity and justice by directing that the securities similarly situated contribute ratably to the loss. We should endeavor to lay down a rule which is consonant with justice and fair dealing. If we follow the Federal courts I think we shall reach that result.

In *Matter of Toole* (274 Fed. Rep. 337) the United States Circuit Court of Appeals, Judge ROGERS writing the opinion said: " The case of *In re J. C. Wilson & Co*, 252 Fed. 631, in the District Court for the Southern District of New York in 1917, received careful

consideration at the hands of the Judge who decided it. It involved an interesting question not passed upon in the *McIntyre* case.* On July 30, 1914, the brokerage firm of Wilson & Co. held for one Rolph 300 shares of Mexican Petroleum stock which had been paid for in full. The brokers without authority hypthecated these shares with Harris, Winthrop & Co. There were other securities which Wilson & Co. also hypothecated without right with Harris, Winthrop & Co. After Wilson & Co. had been adjudicated bank-rupts, Harris, Winthrop & Co. sold certain of the securities which Wilson & Co. had also wrongly hypothecated, but did not sell the Rolph stock, which, as we have said, was wrongfully hypothecated but which survived the liquidation. Rolph claimed, relying on the decision as to Pippey's stock in the *McIntyre* case, that he was entitled to reclaim the identical 300 shares of his stock, but the court thought that the mere accident that Rolph's 300 shares survived liquidation did not give him equities superior to others whose stock had been unlawfully hypothecated with Winthrop & Co. by Wilson & Co. and sold by Winthrop & Co. to discharge their debt against Wilson & Co. In the course of the opinion of the District Judge, referring to the decision as to Pippey's stock in the *McIntyre* case, it was said:

" ' It is true that the court held that the admiralty principle of general average was not applicable, and that the pledge should not be treated as a common adventure; but it did not disturb the proposi-tion that *it is the character of the equity which determines* how any particular claim shall be classified. The case is quite different from one where a pledgee rightly sells collateral *prior to a bankruptcy.* In the abseL.:e of fraud or collusive arrangements, the result of such a sale is one of the hazards which may befall persons in a business of this character. If, however, it be held that, after a petition in bankruptcy has been filed, the pledgee, by selecting for sale some stocks and not others, can thereby save some stocks intact for the owners without the burden of contribution, and not others, it can readily be seen that the door will be opened for the most indefensible kind of favoritism, and possibly for corrupt bargains between the owners of securities and the pledgee. Indeed, a pledgee of his own motion, without any agreement with owners of securities, could easily safeguard his friends, to the detriment of other who were strangers to him. I am fully satisfied, therefore, that Rolph is in the same position as other class A claimants.'

" We think the conclusion above reached was correct, and that the adoption of the contrary theory would lead many times to

---

* *Matter of McIntyre & Co.* (181 Fed. Rep. 955).— [Rep.

unfair practices and work gross injustice. The courts in the United States and England have long acted upon the principle that between different creditors equality is equity. Equality, according to Bracton, constitutes equity itself. All debts are generally deemed by courts of equity to stand in *pari jure* and are to be paid proportionally. In the case of stock unlawfully pledged and belonging to different owners, the equities are originally equal, and that equality is not disturbed by the fact that the stock of one is sold by the pledgee, while that of the other survives. So the principle of general average applied in maritime and commercial operations and which required a general contribution to be made by all parties in interest towards a loss which is voluntarily incurred for the benefit of all, is indicative of the rule which should be applied in a case like this. The principle upon which *contribution* is founded does not rest upon contract but has its *origin in natural law.* Story's Equity Jurisprudence, vol. 1, § 490."

Applying the law as thus stated, the judgment should be reversed and an order made directing the application, *first,* of all pledged securities as to which H. Amy & Co., Louis H. Amy and Ernest J. H. Amy had the right to pledge, and *secondly,* if the proceeds of such securities are insufficient to pay the loan, the larceny creditors should contribute ratably to the payment of the remainder of the loan to the Chase National Bank.

Dowling, Smith, Merrell and Finch, JJ., concur.

Judgment reversed and judgment directed as indicated in opinion. Settle order on notice.